**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ANGELA MCCLAIN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **3:25-cv-00451** |
| | ) | |
| **SAINT THOMAS WEST HOSPITAL d/b/a ASCENSION SAINT THOMAS HOSPITAL MIDTOWN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Angela McClain worked for Ascension Saint Thomas Hospital Midtown ("Ascension") for years as a Senior Abstractor tracking cancer patient data. When breast cancer required her to take several months of medical leave, McClain returned from treatment and immediately helped her team catch up on outstanding work. Months later, McClain developed endometrial cancer and again needed medical leave. By April 2024, McClain had been out for several months. When Ascension asked McClain about her return, she said that she had major cancer surgery scheduled for June 25 and planned to return just six weeks after the surgery. About twenty-five hours later, Ascension notified McClain by text message that it was terminating her employment.

Ascension now moves for summary judgment on each of McClain's Americans with Disabilities Act ("ADA") claims. The motion is ripe for decision. (Doc. Nos. 23, 24, 27, 32). Ascension argues that McClain was unqualified because she could not work when it terminated her, that her request for leave was unreasonable because it lacked a definite return date, and that it fired her because it needed someone to perform her job duties. Because material factual disputes remain on each her claims, the motion (Doc. No. 23) will be denied.

## I. UNDISPUTED MATERIAL FACTS

McClain worked for Ascension as a Senior Abstractor. (Doc. No. 28 ¶ 1). She was responsible for abstracting cancer patient data from medical records. (Id.). She reported to Cancer Registry Manager Dauphne McGavic. (Id. ¶ 5). Tennessee regulations require Ascension to report certain cancer cases to the Tennessee Department of Health within six months. (Id. ¶¶ 6–7).

McClain was diagnosed with breast cancer in October 2022. (Id. ¶ 8). Ascension granted McClain medical leave from October 31, 2022, through March 25, 2023. (Id. ¶ 9). She returned to work on March 26, 2023. (Id. ¶ 10). McGavic later wrote in a performance assessment that McClain "immediately . . . jumped in and began abstracting" cases after returning from medical leave, that her performance met "all current expectations," and that she was "a reliable member of the team." (Doc. No. 27-2 at 37:7–20).

McClain took another medical leave beginning August 28, 2023, for surgery related to her breast cancer. (Doc. No. 28 ¶ 12). While on leave, she was diagnosed with endometrial cancer and underwent another surgery in October 2023. (Id. ¶ 13). Ascension extended her leave through April 13, 2024. (Id. ¶ 14).

McClain's abstracting team struggled to keep up with its workload during her leave. (Id. ¶ 16). The abstracting team ordinarily had nine full-time employees but only had six, including McClain, by April 2024. (Doc. No. 27-2 at 52:23–53:14). Several employees had left the abstracting team, and Ascension had not filled all of their positions. (Id. at 14:2–11, 17:5–16). McGavic testified that if she did not fill every position, she "would have worried about a hardship or backlog." (Id. at 20:3–25).

On April 17, 2024, the Tennessee Department of Health notified McGavic that Ascension would receive a delinquency notice because it was late reporting cancer case information. (Doc. No. 28 ¶ 17). The notice required Ascension to submit an action plan within fifteen days to

avoid a citation. (Id. ¶ 31). After receiving the notice, McGavic contacted Associate Relations for assistance because the abstracting team was struggling to keep up with its caseload and reporting requirements. (Id. ¶ 18).

A few days later, on April 23, 2024, Lead Accommodations Specialist Katie Harnsberger and McClain spoke on the phone about her leave. McClain had been continuously absent from work since August 28, 2023. (Id. ¶ 21). During the April 23 phone call, McClain told Harnsberger that she was unable to return to work at that time. (Id. ¶ 20). McClain informed Harnsberger that she had surgery scheduled for June 25, 2024, and "would be returning after the recovery period of six weeks." (Id. ¶¶ 22–25). McClain based that estimate on her recovery from an earlier breast cancer surgery. (Id. ¶ 25). Harnsberger mentioned that separation from employment was a possibility. (Id. ¶ 26). There is a dispute, however, over whether Harnsberger told McClain that separation was possible because she lacked a definite return date. (Id. ¶ 26).

Ascension's Reasonable Accommodation policy requires Ascension to

> have a dialogue with the associate regarding the nature of the associate's disability, to understand the limitations that result from the disability, and to work together to identify potential reasonable accommodations that could eliminate workplace barriers for the associate and ultimately enable the associate to perform essential functions of the job.

(Id. ¶ 3). The policy applies to requests for additional leave after an employee exhausts short-term disability leave. (Id. ¶ 44).

Harnsberger never asked McClain to provide a specific return date during the April 23 phone call. (Doc. No. 27-1 at 48:3–16). She also never told McClain that Ascension needed additional information for her to remain employed. (Id. at 48:18–24). Ascension conducted no other investigation and took no other action on McClain's leave before deciding to terminate her. (Id. at 46:10–23).

At 1:55 p.m. on April 24, about twenty-five hours after their call, Harnsberger texted McClain: "I just heard from my leadership and they have advised of a 6/3/24 separation date. I wanted to notify you as soon as I heard." (Id.). Harnsberger never told McClain that Ascension had deemed her request for additional leave unreasonable. (Id. at 47:7–14). Ascension selected June 3 as the separation date so McClain could retain her medical benefits through June and her scheduled surgery. (Doc. No. 28 ¶ 28). McClain's employment ended on June 3, 2024. (Id. ¶ 33).

Ascension's plan to address its reporting backlog included approving overtime for the abstractors still working, reassigning their duties other than abstracting, and filling McClain's position. (Id. ¶ 32). The remaining Senior Abstractors continued performing McClain's duties after her termination. (Doc. No. 27-5 at 6). Ascension hired a trainee abstractor at the end of August 2024. (Doc. No. 28 ¶ 34). It did not hire another Senior Abstractor to replace McClain until October 14, 2024. (Doc. No. 27-5 at 6).

McClain received long-term disability benefits from April 2024 to December 2024. (Doc. No. 28 ¶ 39). On June 11, 2024, eight days after McClain's termination became effective, her doctor signed a Sedgwick disability form related to McClain's claim for disability benefits. (Doc. No. 27-4 at 58–59). The doctor marked McClain as "totally disabled" from her occupation, but listed the "[r]estrictions/limitations that preclude her return to work" as "[a]s tolerated." (Doc. No. 27-4 at 58–59). On December 3, 2024, her doctor signed another Sedgwick form that again marked McClain as totally disabled but listed her restrictions "[a]s tolerated by patient." (Id. at 60–61).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine

dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). In deciding a motion for summary judgment, the Court reviews all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter, and instead determines only whether the evidence presented reveals a disputed material issue of fact for the jury to decide. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

## III. ANALYSIS

McClain asserts two ADA claims arising from her termination: failure to accommodate and disability discrimination based on her termination. Ascension moves for summary judgment on both. On the failure to accommodate claim, Ascension argues that McClain was not qualified when it terminated her, that her continued receipt of disability benefits confirms she remained unqualified, and that her request for additional leave was unreasonable because it was indefinite. (Doc. No. 24 at 6–11; Doc. No. 32 at 2–5). On the discrimination claim, Ascension argues that McClain cannot establish that she was qualified or that her disability was a but-for cause of her termination. (Doc. No. 24 at 11–13; Doc. No. 32 at 5–6). The Court addresses those arguments in turn.

### A. Failure to Accommodate

To establish a *prima facie* failure to accommodate claim, McClain must show that (1) she was disabled within the meaning of the ADA; (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) Ascension knew or had reason to know of her

disability; (4) she requested a reasonable accommodation; and (5) Ascension failed to provide a reasonable accommodation. Brumley v. United Parcel Serv., Inc., 909 F.3d 834, 839 (6th Cir. 2018). Ascension concedes that McClain was disabled and that it knew of her disability. (Doc. No. 24 at 7). At issue is whether McClain was a qualified individual and whether Ascension failed to provide her with a reasonable accommodation.

**1. Qualified Individual**

A qualified individual is an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Essential functions are "the fundamental job duties" of the position. 29 C.F.R. § 1630.2(n).

Ascension argues that McClain was not a qualified individual because she "could not perform the job when Ascension terminated her employment." (Doc. No. 24 at 7; see Doc. No. 32 at 1–2). Binding Sixth Circuit precedent—unaddressed by Ascension—forecloses that argument. The Court must assess whether McClain would be otherwise qualified to perform her essential job functions not at the time she was terminated, but at the time of her proposed return to work six weeks after her June 25 surgery. Blanchet v. Charter Commc'ns, LLC, 27 F.4th 1221, 1229 (6th Cir. 2022). As the Sixth Circuit has explained, "[e]mployees requesting medical leave often cannot perform their jobs when they request leave," so assessing an employee's qualification at the time of termination would allow an employer to terminate any employee who could not work when requesting leave. Id.

Genuine disputes of material fact remain concerning whether McClain was qualified when she proposed to return to work. McClain based her estimate that she could return six weeks after her June 25 surgery on her recovery from her previous breast cancer surgery. (Doc. No. 28 ¶¶ 22–25). After McClain returned from that medical leave, McGavic described McClain as a "reliable

member of the team" who "immediately . . . jumped in and began abstracting" cases. (Doc. No. 27-2 at 37:7–20). McClain also testified that she felt able to return to work by August 2024. (Doc. No. 28 ¶ 37). Construing those facts in the light most favorable to McClain, a jury could conclude that she could perform her essential job functions on her proposed return date because she had done so after medical leave in the past and testified that she felt able to do so again.

Ascension argues that McClain's receipt of long-term disability benefits between April 2024 and December 2024 prove that she was not a qualified individual because her doctors confirmed, in her Sedgwick disability claims documents, that she was totally disabled. (Doc. No. 32 at 2). The Sedgwick documents, however, contain conflicting evidence about McClain's ability to perform her job functions at the time of her proposed return. Eight days after McClain's termination became effective in June 2024, her doctor marked her as "totally disabled" from her occupation in the claims document. (Doc. No. 27-4 at 58–59). But in that same document, the doctor also listed the "[r]estrictions/limitations that preclude her return to work" "[a]s tolerated." (Id.). In December 2024, McClain's doctor again marked her as totally disabled in the claims document while describing her restrictions "[a]s tolerated by patient." (Id. at 60–61). The statements in the claims documents concerning McClain's ability to work with restrictions conflict with the statements that she is "totally disabled." They do not establish that McClain was unable to work at the time of her proposed return. Nor do they establish that she could work with restrictions. The jury must decide.

In sum, genuine disputes of material fact remain about whether McClain could perform the essential functions of her position at the time of her proposed return. Ascension is therefore not entitled to summary judgment on the ground that McClain was not a qualified individual.

### 2. Reasonable Accommodation

An employer must make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A). Determining the reasonableness of a proposed accommodation is a question of fact. Blanchet, 27 F.4th at 1229–30 (citing Cassidy v. Detroit Edison Co., 138 F.3d 629, 634 (6th Cir. 1998)).

Ascension argues that McClain's requested accommodation was not reasonable because it was indefinite. (Doc. No. 24 at 7–11; Doc. No. 32 at 2–4). Factual disputes foreclose that characterization. McClain identified a specific surgery date and a specific recovery period: she told Harnsberger that her surgery was scheduled for June 25, 2024, and that she "would be returning after the recovery period of six weeks." (Doc. No. 28 ¶¶ 22–25). A jury could find that McClain requested a defined period of additional leave rather than an indefinite amount.

McClain's failure to provide a date certain for her return does not undermine that conclusion. The Sixth Circuit has held that, where an employer leads an employee to believe that she does not have to provide a date certain for the requested leave, she need not provide an exact return date. Blanchet, 27 F.4th at 1231–32. That is the situation here. During the phone call regarding McClain's request for medical leave, Harnsberger never asked McClain for a specific return date. (Doc. No. 27-1 at 48:3–16). She never told McClain that Ascension needed additional information for her to remain employed. (Id. at 48:18–24). And she never told McClain that Ascension considered her request for additional leave unreasonable. (Id. at 47:7–14). A jury could find that Ascension's failure to communicate the necessity of a date certain during the interactive process led McClain to believe that she did not need to provide one.

Ascension's failure to engage in the interactive process further precludes summary judgment on whether a reasonable accommodation was available. The ADA requires an employer to engage in an interactive process to identify the employee's limitations and potential reasonable accommodations. 29 C.F.R. § 1630.2(o)(3). The purpose of this process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Id. "The interactive process is mandatory, and both parties have a duty to participate in good faith." Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 871 (6th Cir. 2007). Failure to engage in the interactive process does not create an independent claim, but it is relevant to whether a reasonable accommodation was available. Thompson v. Fresh Prods., LLC, 985 F.3d 509, 525 (6th Cir. 2021); Blanchet, 27 F.4th at 1232 n.1.

Ascension's own policy shows that it understood its duty to engage in the interactive process. The policy states that Ascension will "have a dialogue" with an employee to understand the limitations resulting from her disability and "work together to identify potential reasonable accommodations" that could enable her to perform the essential functions of her job. (Doc. No. 28 ¶ 3). The dialogue between Ascension and McClain was short-lived. Harnsberger asked McClain when she expected to return, and McClain gave her an estimate. Harnsberger did not ask for the specific return date that Ascension now says McClain needed to provide. (Doc. No. 27-1 at 48:3–16). She did not ask for additional information that might allow McClain to remain employed. (Id. at 48:18–24). And Ascension conducted no further investigation into McClain's request before deciding to terminate her. (Id. at 46:10–23). Ascension notified McClain of its termination decision about twenty-five hours after McClain provided her return estimate. (Id.).

Viewing that evidence in the light most favorable to McClain, a jury could find that Ascension failed to engage in the mandatory interactive process and that further dialogue could

have produced the specific return date that Ascension says it needed. Ascension cannot benefit at summary judgment from its own failure to engage in a process designed to determine whether a reasonable accommodation was available.

B. Disability Discrimination

Ascension argues that McClain's disability discrimination claim fails because she was not qualified and cannot establish that her disability was a but-for cause of her termination. (Doc. No. 24 at 11–13; Doc. No. 32 at 5–6). As an initial matter, however, the Court must address the parties' disagreement over what type of discrimination claim McClain asserts and the framework that governs it.

In her response, McClain argues that "the direct evidence test applies to failure to accommodate claims" and that she "need not prove that she was terminated because of her disability." (Doc. No. 27 at 19). Ascension responds that "Plaintiff appears to concede that she is not bringing a disparate treatment discrimination claim but only a failure-to-accommodate claim." (Doc. No. 32 at 5). The Court is similarly perplexed by McClain's position. Her Complaint alleges that Ascension "discriminated against Plaintiff based on her disability by denying her a reasonable accommodation *and* by terminating her employment." (Doc. No. 1 ¶ 31 (emphasis added)). The plain reading of that allegation is that it asserts two theories of disability discrimination: one based on Ascension's failure to accommodate McClain and another based on its decision to terminate her because of her disability.

To the extent McClain asserts only a failure to accommodate claim, the Court has already resolved that claim above. To the extent she continues to assert a separate claim that Ascension terminated her because of her disability, that claim is governed by the *McDonnell Douglas* burden-

shifting framework.[1] A failure to accommodate constitutes direct evidence of discrimination when the failure to accommodate is itself the alleged discriminatory act. Kleiber, 485 F.3d at 868–69. The same reasoning does not apply to McClain's discrimination claim based on her termination. Ascension's failure to accommodate McClain is not direct evidence that Ascension terminated her because of her disability because that conclusion requires an inference about what caused Ascension to terminate her. Indeed, the Sixth Circuit expressly recognizes that, even though failure to accommodate claims necessarily involve direct evidence of discrimination, the same is "not necessarily true of claims premised upon an adverse employment decision such as . . . discharge." Kleiber, 485 F.3d at 868 n.2. Because McClain must rely on circumstantial evidence to establish that Ascension terminated her because of her disability, the *McDonnell Douglas* framework governs the claim.

To prevail on her disability discrimination claim, McClain ultimately must prove that Ascension terminated her because of her disability. Babb v. Maryville Anesthesiologists P.C., 942 F.3d 308, 319 (6th Cir. 2019). Under the *McDonnell Douglas* framework, McClain must first establish a *prima facie* case by showing that

> (1) she is actually disabled or regarded as having a disability; (2) she is otherwise qualified for the position, with or without a reasonable accommodation; (3) she suffered adverse action; (4) her employer knew or had reason to know of her disability; and (5) her position remained open or she was replaced.

Edwards v. Shelby Cnty., Tennessee, 159 F.4th 489, 498 (6th Cir. 2025). Once McClain meets that "not onerous" requirement, Ascension must then offer a legitimate nondiscriminatory explanation for its action. Babb, 942 F.3d at 320. A legitimate nondiscriminatory explanation is

[1] The Court expects McClain to clarify in the parties' joint pretrial order whether she continues to pursue a separate disability discrimination claim based on her termination. For present purposes, however, the Court finds no clear waiver of the claim pleaded in Paragraph 31 of the Complaint and thus considers its merits.

a "neutral reason" an employer gives for taking an action against the employee. Tumbleson v. Lakota Loc. Sch. Dist., 175 F.4th 773, 780 (6th Cir. 2026). After Ascension does that, the burden shifts back to McClain to show that Ascension's proffered neutral reason "was pretextual and used to hide disability discrimination." Id. At summary judgment, McClain "need not prove" pretext; she "must prove only enough to create a genuine issue as to whether [Ascension's] rationale is pretextual." Babb, 942 F.3d at 320 (quoting Whitfield v. Tennessee, 639 F.3d 253, 260 (6th Cir. 2011)).

McClain has established a *prima facie* case for purposes of summary judgment. Of the *prima facie* elements, Ascension contests only whether McClain was otherwise qualified for her position. (Doc. No. 24 at 11–12). Ascension also contests whether McClain can ultimately prove that Ascension terminated her because of her disability. (Id. at 12). As explained above, genuine disputes of material fact remain about whether McClain could perform the essential functions of her position at the time of her proposed return. Because the remaining elements of McClain's *prima facie* case are undisputed, the burden shifts to Ascension to identify a "neutral reason" for terminating her. Tumbleson, 175 F.4th at 780.

Ascension has met that burden. It contends that McClain could not return to work and that it needed another Senior Abstractor to address its reporting backlog, comply with the six-month reporting requirement, and resolve the deficiency identified by the Tennessee Department of Health. (Doc. No. 24 at 12). Those staffing and reporting concerns provide a neutral reason for terminating McClain. Tumbleson, 175 F.4th at 780. The burden thus shifts back to McClain to identify a genuine issue as to whether Ascension's proffered neutral reason "was pretextual and used to hide disability discrimination." Id.

McClain has met that burden. Ascension attributes McClain's termination to its staffing and reporting problems, but those problems predated McClain's request for additional leave. The abstracting team ordinarily had nine full-time employees but had only six, including McClain, by April 2024. (Doc. No. 27-2 at 52:23–53:14). Several employees had left the team, and Ascension had not filled all of their positions. (Id. at 14:2–11, 17:5–16). McGavic acknowledged that leaving positions unfilled could create "a hardship or backlog." (Id. at 20:3–25). Even though McClain did not cause those staffing problems, Ascension terminated her within twenty-five hours of her request for additional leave for cancer surgery. (Doc. No. 27-1 at 46:10–23).

McClain's termination then left a hole in the team for several months. Ascension redistributed McClain's responsibilities to the remaining Senior Abstractors. (Doc. No. 27-5 at 6). Ascension hired a trainee abstractor at the end of August 2024, and did not hire another Senior Abstractor until October 14, 2024. (Doc. No. 28 ¶ 34; Doc. No. 27-5 at 6). By the time Ascension filled the gap left by McClain's termination with another Senior Abstractor, McClain's requested period of leave had already ended.

On these facts, where McClain did not cause the staffing problem and Ascension did not hire another Senior Abstractor until after her requested leave would have ended, a jury could find that Ascension's stated neutral reason was pretextual and used to hide disability discrimination. Tumbleson, 175 F.4th at 780. Genuine disputes of material fact thus remain about whether Ascension's proffered neutral reason actually motivated its decision to terminate McClain.

For those same reasons, genuine disputes also remain on the ultimate causation question. Babb, 942 F.3d at 319. A jury could find that Ascension terminated McClain because of her disability.

C. Back Pay and Front Pay

Ascension alternatively seeks summary judgment on McClain's claims for back pay and front pay because she was unavailable to work after her termination. (Doc. No. 24 at 13–14). As explained above, genuine disputes of material fact remain about McClain's ability to work after her termination. The Court therefore will address the availability of back pay and front pay at trial.

## IV. CONCLUSION

For the reasons set forth above, Ascension's motion for summary judgment (Doc. No. 23) will be denied.

An appropriate order will enter.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE